**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JULIET GRAHAM-KILBY, | : | |
| | : | |
| Plaintiff, | : | Case No.:  1:22-cv-01221-LMM-CCB |
| | : | |
| v. | : | |
| | : | |
| J.P. MORGAN CHASE, N.A., | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT AUCTION.COM, LLC'S BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), Defendant Auction.com, LLC ("Auction.com") files this Brief in Support of its Motion to Dismiss the Verified Complaint (the "Complaint") (ECF Doc. 1-1) filed by *pro se* Plaintiff Juliet Kilby a/k/a Juliet Graham-Kilby ("Plaintiff"), showing this Honorable Court as follows:

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

A. Factual Background

This case arises out of and concerns the real property located at 1545 Loch Lomond Trail, Atlanta, Georgia 30331 (the "Property").  Pl. Compl. ¶ 29.  Plaintiff purchased the Property on or about March 16, 2000.  *Id.*  On or about December 21, 2000, Plaintiff obtained a residential mortgage loan from Wachovia Bank, N.A. in the original principal amount of $200,000.00 (the "Loan").  As security for the Loan, Plaintiff executed a Security Deed conveying the Property to Mortgage Electronic Registration Systems, Inc. ("MERS"), which Security Deed was recorded on December 30, 2000 at Deed Book 29825, Page 100 of the Fulton County, Georgia real property records.  A true and correct copy of the Security Deed is attached hereto as Exhibit A and incorporated herein by reference.[2]

---

[1] Unless otherwise specified herein, the factual background set forth in this memorandum is derived from the allegations set forth in Plaintiff's Complaint, which allegations are to be accepted by the Court as true for purposes of this motion only.  *See Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009) ("We review the grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim de novo, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.").  By including these allegations in the instant memorandum, Auction.com is neither admitting nor denying the veracity of any such allegations.

[2] This Court may take judicial notice of public records not attached to a complaint when considering a motion to dismiss.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).  Moreover, the Court may consider the referenced document in ruling on Auction.com's Motion to Dismiss because it is "central to the

2

Beginning in 2006, Plaintiff started receiving bills for "forced placed" insurance on the Property from Standard Guaranty, a subsidiary of Assurant.  Pl. Compl. ¶ 25.  Plaintiff alleges that this forced place insurance "costs more than coverage than [*sic*] a borrower could obtain in the open market, and provides less coverage, as it does not provide insurance for the home contents or liability, and higher deductibles."  Pl. Compl. ¶ 27.  Plaintiff made a claim on this insurance policy in 2006, but her claim was denied.  *Id.*

On or about July 1, 2008, Plaintiff and Chase Home Finance, LLC, successor by merger to Chase Manhattan Mortgage Corporation, entered into a Loan Modification Agreement, which was recorded on November 6, 2000, at Deed Book 47337, Page 176 of the Fulton County, Georgia real property records.  A true and correct copy of the Loan Modification Agreement is attached hereto as Exhibit B and incorporated herein by reference.

---

plaintiff's claims," and there is no reason to doubt its authenticity.  *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (holding that "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and it is undisputed in terms of authenticity"); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997); *Breckenridge Creste Apartments, Ltd. v. Citicorp Mortgage, Inc.*, 826 F.Supp. 460, 464 (N.D. Ga. 1993), *aff'd mem.*, 21 F.3d 1126 (11th Cir. 1994) (table decision).

3

The Security Deed was subsequently assigned by MERS to JPMorgan Chase Bank, National Association successor by merger to Chase Home Finance, LLC ("Chase Bank") by way of the Assignment recorded on September 16, 2010 at Deed Book 49369, Page 677 of the Fulton County, Georgia real property records (the "Assignment").  A true and correct copy of the Assignment is attached hereto as Exhibit C and incorporated herein by reference.  On October 9, 2012, a Corrective Assignment of the Security Deed from MERS to Chase Bank was recorded at Deed Book 51748, Page 101 of the Fulton County, Georgia real property records (the "Corrective Assignment").  A true and correct copy of the Corrective Assignment is attached hereto as Exhibit D and incorporated herein by reference.

Chase Bank became the servicer of the Loan on July 19, 2001.  Pl. Compl. ¶ 21.  In July 2010, the law firm of McCalla Raymer Leibert Pierce, LLC ("McCalla Raymer"), on behalf of Chase Bank, began sending foreclosure notices to Plaintiff relating to the Loan and the Property.  Pl. Compl. ¶ 23.  McCalla Raymer sent additional foreclosure notices to Plaintiff relating to the Loan and the Property in 2012 and 2018.  Pl. Compl. ¶¶ 24, 28.  The Property was eventually sold under power of sale at a non-judicial foreclosure sale held on March 1, 2022.[3]

---

[3] Plaintiff's Complaint was filed on February 22, 2022, prior to the foreclosure sale date.

4

B. Procedural History

Plaintiff filed the instant lawsuit against Auction.com and numerous other defendants (including Chase Bank and McCalla Raymer) in the Superior Court of Fulton County, Georgia on February 22, 2022. *See generally* Pl. Compl. This case was removed to this Court on March 28, 2022. ECF Doc. 1. Plaintiff's Complaint purports to assert the following claims for relief:

1. Violation of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA") and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA") (against Chase Bank only). Pl. Compl. ¶¶ 35-37;

2. Violation of the Civil Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 ("RICO") (against Chase Bank and Assurant only). Pl. Compl. ¶¶ 38-42;

3. Breach of contract (against Assurant only). Pl. Compl. ¶¶ 43-47;

4. Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") (against McCalla Raymer only). Pl. Compl. ¶¶ 48-50;

5. Fraud (against Chase Bank only). Pl. Compl. ¶¶ 51-54;

6. Breach of fiduciary duty (against Chase Bank only).  Pl. Compl. ¶¶ 55-58;

7. Breach of the covenant of good faith and fair dealing (against all defendants).  Pl. Compl. ¶¶ 59-61; and

8. Infliction of emotional distress (against all defendants).  Pl. Compl. ¶¶ 62-66.[4]

Only two (2) claims (breach of the covenant of good faith and fair dealing and the infliction of emotional distress) out of Plaintiff's eight (8) enumerated claims for relief are asserted against Auction.com.  However, Plaintiff's Complaint is devoid of any factual allegations concerning the alleged conduct or omissions of Auction.com.  For the reasons set forth below, Plaintiff's Complaint fails to state a claim against Auction.com upon which relief can be granted, and should therefore be dismissed as against Auction.com, pursuant to FRCP 12(b)(6).

---

[4] It is unclear from Plaintiff's Complaint whether Plaintiff is attempting to assert a claim here for the intentional infliction of emotional distress or the negligent infliction of emotional distress.  As a result, both causes of action will be analyzed by Auction.com in this motion.

6

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A. The Standard for Relief

Under FRCP 12(b)(6), a complaint must be dismissed if it "fail[s] to state a claim upon which relief can be granted."  To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)).  A pleading containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.  *See also Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949-50 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth.").  Rather, Plaintiffs are required to make factual allegations which are "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Put simply, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (alteration in original) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955).

Although a complaint must generally be taken as true when ruling on a motion to dismiss, a court should not accept "conclusory allegations, unwarranted

deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt. v Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2001). The Court may dismiss a complaint "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. Of Educ. V. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Furthermore, *pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1989) (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)). "[E]ven in *pro se* cases, the Court is not permitted to serve as de facto counsel to a party or to rewrite an otherwise deficient pleading." *Standifer v. SEC*, 542 F.Supp.2d 1312, 1316 (N.D. Ga. 2008).

B. <u>Plaintiff's Complaint fails to state a claim against Auction.com for breach of the implied covenant of good faith and fair dealing</u>

Plaintiff first purports to assert a claim against Auction.com and all of the other named defendants for violation of the implied covenant of good faith and fair dealing. Pl. Compl. ¶¶ 59-61(a-h). "The implied covenant of good faith and fair dealing in performing a contract has a basis in both statutory and common law." *Stuart Enterprises Intern., Inc. v. Peykan, Inc.*, 252 Ga.App. 231, 233, 555 S.E.2d 881, 883 (2001). As the Eleventh Circuit Court of Appeals has stated, "the

8

'covenant' [of good faith and fair dealing] is not an independent contract term," but is instead "a doctrine that modified the meaning of all explicit terms in a contract, preventing a breach of these explicit terms *de facto* when performance is maintained *de jure*." *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990). The implied covenant of good faith and fair dealing "is not an undertaking that can be breached apart from those terms." *Id.*

Here, Plaintiff's claim against Auction.com for breach of the implied covenant of good faith and fair dealing fails to state a claim against Auction.com as a matter of law. First, Plaintiff's Complaint is devoid of any facts which would even arguably demonstrate that Auction.com violated the implied covenant good faith and fair dealing, as the Complaint is completely devoid of factual allegations concerning any alleged acts or omissions of Auction.com. *See generally* Pl. Compl. Second, Plaintiff's Complaint fails to identify any even arguable contractual relationship between Auction.com and Plaintiff, and the existence of a contractual relationship is a prerequisite to maintaining a successful derivative claim for breach of the implied covenant of good faith and fair dealing under Georgia law. *See Stuart Enterprises Intern., Inc.*, 252 Ga.App. at 234, 555 S.E.2d at 844 (Georgia law does not provide an independent cause of action for breach of the implied covenant of good faith and fair dealing separate and apart from a claim for breach of contract). For these

9

reasons, Auction.com respectfully requests that this claim be dismissed as against

Auction.com for failure to state a claim upon which relief may be granted.

C. Plaintiff's Complaint fails to state a claim against Auction.com for the intentional or negligent infliction of emotional distress

Plaintiff's final claim, for the infliction of emotional distress, alleges that,

> The actions of Chase [Bank] and the law firm defendants of attempting to sell the two sub-divided lots which [Plaintiff] owns free and clear of any mortgage, of attempting to foreclose on her and demanding as part of the foreclosure that the lender be paid thousands of dollars in falsely inflated 'force placed insurance' premiums, interest, legal fees, and causing devastating financial hardships, when they all know, the planned foreclosure was and is barred by the statute of limitations. This has cause [Plaintiff] to have nightmares, gain weight, elevate her blood pressure, financial hardship, damage to credit and reputation, and undergo extensive medical assistance.

Pl. Compl. ¶ 63. This final claim fails to state a claim against Auction.com for either

the intentional or negligent infliction of emotional distress, for the reasons set forth

below.

1. Plaintiff's Complaint fails to state a claim against Auction.com for the intentional infliction of emotional distress

In order to recover on a claim for the intentional infliction of emotional

distress under Georgia law, a party must demonstrate that,

> (1) the conduct at issue was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the resulting emotional distress was severe.

*Canziani v. Visiting Nurse Health Systems, Inc.*, 271 Ga.App. 677, 679, 610 S.E.2d 660, 662 (2005).

> Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. Moreover, it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Id. (quoting *Phinazee v. Interstate Nationalease,* 237 Ga.App. 39, 39-40, 514 S.E.2d 843 (1999)). "To meet the extreme and outrageous test, the conduct 'must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Udoinyion v. Re/Max of Atlanta*, 289 Ga.App. 580, 584, 657 S.E.2d 644, 648 (2008) (quoting *Kaiser v. Tara Ford, Inc.*, 248 Ga.App. 481, 486, 546 S.E.2d 861 (2001)). "The conduct must inflict emotional distress, 'so severe that no reasonable [person] could be expected to endure it.'" *Id.* (quoting *Peoples v. Guthrie*, 199 Ga.App. 119, 121, 404 S.E.2d 442 (1991)).

In the instant case, Plaintiff's Complaint fails to identify any alleged conduct undertaken by Auction.com that would even arguably constitute the "extreme and

outrageous" conduct that would sustain a claim for the intentional infliction of emotional distress under Georgia law. Plaintiff's Complaint, in fact, devoid of any factual allegations whatsoever concerning the alleged conduct of Auction.com. Accordingly, Plaintiff's claim against Auction.com for the intentional infliction of emotional distress must be dismissed.

2. Plaintiff's Complaint fails to state a claim against Auction.com for the negligent infliction of emotional distress

"[T]here is no cognizable tort in Georgia for negligent infliction of emotional distress." *Jackson v. Johnson & Johnson*, No. 1:11-CV-3903-TWT, 2021 WL 6113560, at *1 (N.D. Ga. Oct. 21, 2021) (citing *Holbrook v. Stansell*, 254 Ga.App. 553, 554, 562 S.E.2d 731, 733 (2002)).  However, a plaintiff "can still recover for emotional damages resulting from [a defendant's] negligent conduct if she satisfies the impact rule's requirements." *Id.* at *2.  "Under Georgia's impact rule, 'recovery for [negligent infliction of] emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury.'…. And although Georgia law permits an exception for certain pecuniary losses, the exception applies only to '*a pecuniary loss resulting from an injury to the person which is not physical.*'" *Coon v. Medical Center, Inc.*, 335 Ga.App. 278, 283, 780 S.E.2d 118, 123 (2015) (emphasis in original, internal citations omitted); *Mungai v. Chase Bank USA, N.A.*, No. 1:19-cv-00409-AT-RDC, 2020 WL 10225827, at *9 (N.D. Ga. Aug.

12

4, 2020) ("'In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury.'" (quoting *Smith v. Stewart*, 291 Ga.App. 86, 101, 660 S.E.2d 822, 834 (2008)), report and recommendation adopted at Dkt. 45 (N.D. Ga. Aug. 26, 2020).

In the instant case, Plaintiff's Complaint is completely devoid of any allegations that the alleged conduct of Auction.com resulted any physical injury to Plaintiff or a pecuniary loss resulting from such a physical injury. *See generally* Pl. Compl. In fact, the Complaint is completely devoid of any allegations whatsoever concerning the alleged conduct of Auction.com.  Accordingly, this claim for relief must also be dismissed as against Auction.com for failure to state a claim upon which relief may be granted.

### III.   <u>CONCLUSION</u>

Based on the foregoing, Defendant Auction.com respectfully requests that the Court **<u>GRANT</u>** its motion to dismiss and dismiss all claims asserted by Plaintiff against Auction.com for failure to state a claim upon which relief may be granted, pursuant to FRCP 12(b)(6).

RESPECTFULLY SUBMITTED, this the 4th day of April, 2022.

**LOCKE LORD LLP**

*/s/Steven J. Flynn*
Steven J. Flynn
Georgia Bar No. 313040
*steven.flynn@lockelord.com*
Terminus 200, Suite 1200
3333 Piedmont Road, N.E.
Atlanta, GA  30305
(404) 870-4600 (Tel.)
(404) 872-5547 (Fax)
*Attorney for Defendant Auction.com,*
*LLC*

112825840v.3

## <u>CERTIFICATION</u>

The undersigned further certifies that this document has been prepared in accordance with the formatting requirements designated in Local Rule 5.1.

RESPECTFULLY SUBMITTED, this the 4th day of April, 2022.

> LOCKE LORD LLP
>
> */s/Steven J. Flynn*
> Steven J. Flynn
> Georgia Bar No. 313040
> *steven.flynn@lockelord.com*
> Terminus 200, Suite 1200
> 3333 Piedmont Road, N.E.
> Atlanta, GA  30305
> (404) 870-4600 (Tel.)
> (404) 872-5547 (Fax)
> *Attorney for Defendant Auction.com,*
> *LLC*

112825840v.3

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **DEFENDANT AUCTION.COM, LLC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT** has been filed with the Court's ECF system, which will serve a copy of this filing upon all counsel of record, and by United States Mail, First-Class, postage pre-paid, addressed as follows:

> Juliet Graham-Kilby
> P.O. Box 50163
> Atlanta, Georgia 30302
> *Plaintiff Pro Se*

RESPECTFULLY SUBMITTED, this the 4th day of April, 2022.

LOCKE LORD LLP

*/s/Steven J. Flynn*
Steven J. Flynn
Georgia Bar No. 313040
*steven.flynn@lockelord.com*
Terminus 200, Suite 1200
3333 Piedmont Road, N.E.
Atlanta, GA 30305
(404) 870-4600 (Tel.)
(404) 872-5547 (Fax)
*Attorney for Defendant Auction.com, LLC*

16

112825840v.3

Return To:

**BROWN & KATZ, PC**
3814 Satellite Blvd.
Duluth, GA 30096

Prepared By:

Deed Book 29825 Pg   100
Filed and Recorded Dec-30-2000 08:43am
2000-0344567
Georgia Intangible Tax Paid $600.00
**Juanita Hicks**
Clerk of Superior Court
Fulton County, Georgia

*26670C*

———— [Space Above This Line For Recording Data] ————

# SECURITY DEED

MIN   1000677-0200791974-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   DECEMBER   21ST 2000   , together with all Riders to this document.
**(B) "Borrower"** is
JULIET D KILBY

Borrower is the grantor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3011 1/01
OFFICE J1   0200791974   MGCD
-6A(GA) (0008).01
Page 1 of 16   Initials:
VMP MORTGAGE FORMS - (800)521-7291

Ex. A- Page 1 of 16

DEC 20'00 16:49 FR WACHOVIA NC COLA SC  803 988 3258 TO 917706238092   P.10/23

Deed Book 29825 Pg  101

**(D)** "Lender" is WACHOVIA BANK, N.A.

Lender is a CORPORATION
organized and existing under the laws of NORTH CAROLINA
Lender's address is P.O. BOX 8080 LYNCHBURG, VIRGINIA 24505

**(E)** "Note" means the promissory note signed by Borrower and dated  DECEMBER  21ST 2000 .
The Note states that Borrower owes Lender  TWO HUNDRED THOUSAND AND 00/100 – – – –
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – Dollars
(U.S. $  ***200,000.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  JANUARY  1ST  2031 .
**(F)** "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
**(G)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

WAIVER OF BORROWERS RIGHTS
AND CLOSING ATTORNEY AFFIDAVIT

**(I)** "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
**(J)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments
and other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.
**(K)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated
by check, draft, or similar paper instrument, which is initiated through an electronic terminal,
telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial
institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale
transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and
automated clearinghouse transfers.
**(L)** "Escrow Items" means those items that are described in Section 3.
**(M)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages described
in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of
all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations
of, or omissions as to, the value and/or condition of the Property.
**(N)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(O)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest
under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

-6A(GA) (0005).01    Page 2 of 15    Initials    Form 3011 1/01

Ex. A- Page 2 of 16

Deed Book 29825 Pg 102

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the _____ County [Type of Recording Jurisdiction] of Fulton [Name of Recording Jurisdiction] :

**ALL THAT TRACT or parcel of land lying and being in Land Lot 62 and 63 of the 14th District of Fulton County, Georgia, being Lot 2, Block B, Loch Lomond Estates Subdivision, Unit Three, as per plat recorded in Plat Book 71, page 106, Fulton County, Georgia Records, which plat is incorporated herein and by this rererence made a part hereof.**

which currently has the address of

| | | |
|---|---|---|
| Parcel ID Number: | 1545 LOCH LOMOND TRAIL | [Street] |
| ATLANTA | [City] , Georgia  30331 | [Zip Code] |

("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(GA) (0005).01                Page 3 of 15         Initials: ___         Form 3011 1/01

Ex. A- Page 3 of 16

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

-6A(GA) (0005).01                         Page 4 of 15                         Initials: _____                 Form 3011 1/01

Deed Book 29825 Pg  104

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

-6A(GA) (0005).01                     Page 5 of 15         Initials:               Form 3011 1/01

Ex. A- Page 5 of 16

Deed Book 29825 Pg 105

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was

-6A(GA) (0005).01                      Page 6 of 15        Initials:                    Form 3011 1/01

Deed Book 29825 Pg   106

required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

-6A(GA) (0005).01                  Page 7 of 15                  Form 3011 1/01

Initials

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and

-6A(GA) (0005).01                          Page 8 of 15                          Initials: ___            Form 3011 1/01

Deed Book 29825 Pg 108

Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

-6A(GA) (0005) 01                    Page 9 of 15          Initials                    Form 3011 1/01

Deed Book 29825 Pg  109

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security

-6A(GA) (0005).01                    Page 10 of 15                    Initials                    Form 3011 1/01

Ex. A- Page 10 of 16

Deed Book 29825 Pg 110

Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with

GMP-6A(GA) (0005).01                     Page 11 of 16                     Form 3011 1/01

Initials: [signature]

https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=4382293&key1=29825&key2=100&county=60&countyname=FULTON&userid=657101&a...     11/16

Deed Book 29825 Pg 111

Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental

-6A(GA) (0005).01                           Page 12 of 16                    Initials _____          Form 3011 1/01

Ex. A- Page 12 of 16

Deed Book 29825 Pg 112

protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power**

GMP -6A(GA) (0005) 01                     Page 13 of 15        Initials [signature]        Form 3011 1/01

Ex. A- Page 13 of 16

Deed Book 29825 Pg  113

and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

-6A(GA) (0005).01                    Page 14 of 15          Initials:          Form 3011 1/01

Deed Book 29825 Pg  114

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)
JULIET D KILBY               -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

STATE OF GEORGIA,      Gwinnett          County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,
State of Georgia

JOEL B. KATZ
MY COMMISSION EXPIRES
OCT
5
2003
JEFF. CLARKE CO. GEORGIA
NOTARY PUBLIC

0200791974  MGC2
-6A(GA) (0005)01                    Page 15 of 15                    Form 3011 1/01

GEORGIA

LOAN #:  0200791974

Deed Book 29825 Pg  115
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

GRANTOR:   Juliet D. Kilby

LENDER:   Wachovia Bank, N.A.

DATE OF SECURITY DEED:       December 21, 2000

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED-FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered
in the presence of

_____
Notary Public

_____ (SEAL)
Juliet D. Kilby - Grantor

_____ (SEAL)
- Grantor

_____ (SEAL)
- Grantor

_____ (SEAL)
- Grantor

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower, I reviewed with and explained to the Borrower the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower of Borrower's rights. After said review and explanation to Borrower, Borrower executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to Borrower, it is my opinion that Borrower knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____
Notary Public

_____
Closing Attorney

### FORECLOSURE CLOSING DISCLOSURE

O.C.G.A Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
Juliet D. Kilby

Ex. A- Page 16 of 16

Deed Book 47337 Pg  176
Filed and Recorded Nov-06-2008 01:33pm
2008-0292045
Georgia Intangible Tax Paid $193.80
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia

CROSS REFERENCE
LN Book 3421 Page 324

When recorded mail to: MPG
Equity Loan Services, Inc.
Loss Mitigation Title Services- LMTS
1100 Superior Ave., Ste 200    436 1794
Cleveland, OH 44114
Attn: National Recordings 1120

39179577   KILBY
FIRST AMERICAN ELS
MODIFICATION AGREEMENT

193.80 GA

Prepared by Bob Woodward
RE: Loan Number 1968078869
(800) 446-8939 Homeowner's Assistance Department

NEW MONEY  #42,159.78

## LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), Made Effective The First Day Of July, 2008, Between Juliet D. Kilby ("Borrower/S") And Chase Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation   ("Lender"), Amends And Supplements (1) The Mortgage, Deed Of Trust, Or Deed To Secure Debt (The "Security Instrument") To Mortgage Electronic Registration Systems, Inc. Solely as Nominee for Wachovia Bank NA. Dated December 21, 2000, And Recorded In Book 29825, At Page 100 On December 30, 2000, Of The Records Of Fulton County and subsequently assigned to Chase Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation of the records of Fulton County (2) The Note Bearing The Same Date As, And Secured By, The Security Instrument ("Note"), (Collectively, The "Loan Documents"), Which Cover The Real And Personal Property Described In The Security Instrument And Defined Therein As The "Property", Located At 1545 Loch Lomond Trail, Atlanta, Georgia 30331, with the original principal balance U.S. $200,000.00, and the principal balance before the loan modification being U.S. $189,849.79,  the real property described being set forth as follows:

All That Tract Or Parcel Of Land Lying And Being In Land Lots 62 And 63 Of The 14th Ff District Of Fulton County, Georgia, Being Lot 2, Block B, Unit 3, Loch Lomond Subdivision, According To Plat Recorded At Plat Book 71, Page 106, Fulton County Records, Which Said Plat Is Incorporated Herein By This Reference And Made A Part Of This Description

A.P. NO: 14F-0062-0002-012-3

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Loan Documents):

1. As of July 1, 2008, the amount payable under the Loan Documents is U.S. $242,159.78 (the "Unpaid Principal Balance") consisting of the amount(s) loaned to the Borrower by the Lender and any interest capitalized to date

2. The Maturity Date of the above referenced Note has been amended from January 01, 2031, to July 1, 2048 ("Maturity Date").

3. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at yearly rates as specified below:

   (a) The rate of 4.250% for the payments due from August 1, 2008 through and including July 1, 2009

   (b) The rate of 5.25% for the payments due from August 1, 2009 through and including July 1, 2010

Deed Book 47337 Pg  177

(c)  The rate of 6.250% for the payments due from August 1, 2010
     through and including July 1, 2011

(d)  The rate of 6.6250% for the payments due from August 1, 2011
     through and including July 1, 2048.

4.  The Borrower promises to pay the Unpaid Principal Balance, plus interest, to
    the order of the Lender.  The Borrower promises to make monthly payments
    of principal and interest as specified below:

(a)  Monthly payments of $1,050.06 for the payments due from
     August 1, 2008 through and including July 1, 2009.

(b)  Monthly payments of $1,205.41 for the payments due from
     August 1, 2009 through and including July 1, 2010.

(c)  (c) Monthly payments of $1,366.91 for the payments due from
     August 1, 2010 through and including July 1, 2011.

(d)  Monthly payments of $1,428.55 for the payments due from
     August 1, 2011 through and including July 01, 2048  If on the Maturity
     Date, the Borrower still owes amounts under the Loan Documents as
     amended by this Agreement, the Borrower will pay such amounts in full
     on the Maturity Date.
     The Borrower will make such payments at P.O. Box 78420, Phoenix, AZ
     85062-8420, or at such other place as the Lender may require.

5.  If all or any part of the Property or any interest in it is sold or transferred (or if
    a beneficial interest in the Borrower is sold or transferred and the Borrower is
    not a natural person) without the Lender's prior written consent, the Lender
    may, at its option, require immediate payment in full of all sums secured by
    the Loan Documents.  If the Lender exercises this option, the Lender shall give
    the Borrower notice of acceleration.  The notice shall provide a period of not
    less than 30 days from the date the notice is delivered or mailed within which
    the Borrower must pay all sums secured by the Loan Documents.  If the
    Borrower fails to pay these sums  prior to the expiration of this period, the
    Lender may invoke any remedies permitted by the Loan Documents without
    further notice or demand on the Borrower.

6.  The Borrower also will comply with all other covenants, agreements, and
    requirements of the Loan Documents, including without limitation, the
    Borrower's covenants and agreements to make all payments of taxes,
    insurance premiums, assessments, escrow items, impounds, and all other
    payments that the Borrower is obligated to make under the Loan Documents;
    however, the following terms and provisions are forever canceled, null and
    void, as of the date specified in paragraph No. 1 above:

(a)  all terms and provisions of the Loan Documents (if any) providing for,
     implementing, or relating to, any change or adjustment in the rate of interest
     payable under the Note; and

(b)  all terms and provisions of any adjustable rate rider of other instrument or
     document that is affected to, wholly or partially incorporated into, or is
     part of, the Loan Documents and that contains any such terms and
     provisions as those referred to in (a) above.

7.  Nothing in this Agreement shall be understood or construed to be a
    satisfaction or release in whole or in part of the Loan Documents.  Except as
    otherwise specifically provided in this Agreement, the Loan Documents will
    remain unchanged, and the Borrower and Lender will be bound by, and
    comply with, all of the terms and provisions thereof, as amended by this
    Agreement.

8.  See Attached exhibit A by Borrower JK and keller 8/2/58

Deed Book 47337 Pg  178

_Roslyn Alaga_
Witness Signature

_Janet D. Kilby_

Roslyn Alaga
Printed Name of Witness

_K U Washington_
Witness 2 Signature

Kendrick C Washington
Printed Name of Witness

Deed Book 47337 Pg 179

_____ {Space Below This Line for Acknowledgments} _____

STATE OF _Georgia_
COUNTY OF _Cobb Fulton_

Before me, a Notary Public, in and for said County, personally appeared the above named
Juliet D. Kilby who acknowledged that he/she did sign the foregoing instrument, and that the same
is his/her free act and deed.

In Testimony Whereof, I have hereunto subscribed my name and affixed my official seal at
_Atlanta, GA_, this _27th_ day of _July_, 200_8_.

_Cheryl L Hill_
Notary Public (Signature)

_Cheryl L. Hill_
Notary Public (Printed Name)

Cheryl L. Hill
My commission expires: Notary Public, Cobb County Georgia
_April 11, 2011_

Deed Book 47337 Pg 180
Catherine Robinson
Clerk of Superior Court
Fulton County Georgia

Chase Home Finance LLC, successor by merger
to Chase Manhattan Mortgage Corporation

_____          _____
Witness 1 Signature                       Ellen Koonce
                                          Assistant Vice President
Charles R Conner
_____
Printed Name of Witness

_____
Witness 2 Signature

_____
Printed Name of Witness


STATE OF OHIO
COUNTY OF FRANKLIN

        Before me, a Notary Public, in and for said County, personally appeared Ellen
Koonce , to me known and known to the person who, as an Assistant Vice President of Chase
Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation ., the
corporation which executed the foregoing instrument, signed the same, and acknowledged to me
that said person did so sign said instrument in the name and behalf of said corporation as such
officer; that the same is that person's free act and deed as such officer, and the free and corporate
act and deed of said corporation; that said person was duly authorized thereunto by its Board of
Directors.

        In Testimony Whereof, I have hereunto subscribed my name, and affixed my
official seal, at Columbus Ohio, this _22_ day of _October_____, 20_08_

                                          _____
                                          Notary Public (Signature)

        Danny P. Madden                   Danny P. Madden
        Notary Public, State of Ohio      _____
        My Commission Expires 11-04-2010  Notary Public (Printed Name)
My commission expires: _____

Deed Book 49369 Pg 677
Filed and Recorded Sep-16-2010 09:51am
2010-0339947
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

CROSS REFERENCE
LN Book 3421 Page 324

Loan No.: 1968078869
Our File No.: 5428207-FT3
Debtor: Juliet D. Kilby
Sale Date: 10/05/2010

Return to
Prommis Solutions, LLC
1544 Old Alabama Road
Roswell, GA 30076

## ASSIGNMENT

STATE OF

COUNTY OF

For value received, Mortgage Electronic Registration Systems, Inc. has this day transferred, sold, assigned, conveyed and set over to Chase Home Finance LLC, whose address is 3415 Vision Drive, Columbus, OH 43219, as Assignee, its successors, representatives and assigns, all its right, title and interest in and to a certain Security Deed (or Deed to Secure Debt) executed by Juliet D. Kilby to Mortgage Electronic Registration Systems, Inc., dated December 21, 2000, recorded in Deed Book 29825, Page 100, Fulton County, Georgia Records.

Property Address: 1545 Loch Lomond Trail, Atlanta, GA 30331

The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and assigns, the aforesaid Security Deed, the property described therein, the indebtedness secured thereby together with all the powers, options, privileges and immunities therein contained.

The Assignor herein has this day sold and assigned to the Assignee herein the note secured by the aforesaid Security Deed and this transfer is made to secure the Assignee, its successors, representatives and assigns, in the payment of said note.

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and seal this July 5, 2010.

Signed, sealed and delivered
in the presence of:

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

Unofficial Witness

By: _____
Printed Name: C. Troy Crouse
Title: Vice President

Notary Public
My Commission Expires:

By: _____
Printed Name: Thomas Sears
Title: Assistant Secretary
(Corporate Seal)

DEBBIE R. FOUSHEE
NOTARY
EXPIRES
GEORGIA
AUG. 05, 2014
PUBLIC
FULTON COUNTY

Deed Book 51748 Pg 101
Filed and Recorded Oct-09-2012 09:07am
2012-0256911
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Loan No.: 1968078869
Our File No.: 5428207-FT3
Debtor: Juliet D. Kilby

**\*The purpose of this corrective assignment is to clarify the effective date of the transfer**

CROSS INDEX DEED
BOOK 49369 PAGE 677
FULTON COUNTY
GEORGIA RECORDS

Return to
Prommis Solutions, LLC
1544 Old Alabama Road
Roswell, GA 30076

Corrective
ASSIGNMENT

STATE OF

COUNTY OF

MIN: 100067702007919748
MERS PHONE: 888-679-6377

For value received, Mortgage Electronic Registration Systems, Inc. has this day transferred, sold, assigned, conveyed and set over to JPMorgan Chase Bank, National Association successor by merger to Chase Home Finance, LLC, whose address is 3415 Vision Drive, Columbus, OH 43219, as Assignee, its successors, representatives and assigns, all its right, title and interest in and to a certain Security Deed (or Deed to Secure Debt) executed by Juliet D. Kilby to Mortgage Electronic Registration Systems, Inc., dated December 21, 2000, recorded in Deed Book 29825, Page 100, Fulton County, Georgia Records and as modified by that certain Loan Modification Agreement recorded in Deed Book 47337, Page 176, Fulton County, Georgia Records.

Property Address: 1545 Loch Lomond Trail, Atlanta, GA 30331

The effective date of this assignment is July 5, 2010

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and seal this Oct 1, 2012

Signed, sealed and delivered
in the presence of:

Unofficial Witness Sylvia G Osotkowski

Notary Public          Notary Public State of Florida
My Commission Expires:

July 1, 2016

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____
Printed Name: Linda Cozine
Title: _____ Assistant Secretary

By: _____
Printed Name: Daniel Reddick
Title: Assistant Secretary
(Corporate Seal)

DEIDRA KAY HAMILTON
MY COMMISSION # EE212977
EXPIRES July 01, 2016
(407) 398-0153    FloridaNotaryService.com